**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **GGS INFORMATION SYSTEMS, INC., )** | **CASE NO. 1:20CV305** |
| ) | |
| **Plaintiff,** ) | **SENIOR JUDGE** |
| ) | **CHRISTOPHER A. BOYKO** |
| **vs.** ) | |
| ) | **OPINION AND ORDER** |
| **HDT EXPEDITIONARY** ) | |
| **SYSTEMS, INC.,** ) | |
| **Defendant.** ) | |

**CHRISTOPHER A. BOYKO, SR. J.:**

This matter comes before the Court upon the Motion (ECF DKT #16) of Defendant

HDT Expeditionary Systems, Inc. to Dismiss First Amended Complaint or in the alternative,

to Strike Certain Allegations.  For the following reasons, the Motion to Dismiss First

Amended Complaint is granted.

**I. BACKGROUND**

Plaintiff GGS Information Systems, Inc. originally filed this action against Defendant

HDT Expeditionary Systems, Inc. on February 12, 2020.  The First Amended Complaint

(ECF DKT #15) was filed on April 15, 2020.

Plaintiff provides technical publication and documentation services, including drafting

technical manuals for end-user products.  Plaintiff's principal place of business is in Pennsylvania.  Defendant produces products for military and government solutions and its principal place of business is in Solon, Ohio.

Plaintiff, as a sub-subcontractor, and Defendant, as subcontractor to Berg Manufacturing Inc., entered into a contract whereby Plaintiff agreed to develop the Field Maintenance Manual with Repair Parts and Special Tools List for the Multi- Temperature Refrigerated Container System 03 ("MTRCS").  The MTRCS is an insulated container that can store ration components at different temperatures simultaneously.

Based upon a Statement of Work and other data from Defendant, Plaintiff tendered its proposal for a technical manual on June 21, 2017.  The proposal included a detailed cost summary and a quote of $259,764.00.

Plaintiff and Defendant executed a Subcontract on July 28, 2017.  (ECF DKT #15-2). Defendant submitted a Purchase Order for Plaintiff's services on August 1, 2017, at a firm fixed price of $275,000.00.  The Delivery Date was scheduled for August 21, 2017.  (ECF DKT #15-3).

Within months, Plaintiff realized that the scope of work had expanded, more materials needed to be created from "scratch" than previously thought and costs were increasing.  The parties met on February 28, 2018, and Defendant confirmed that it would pay over and above the contract price; so, Plaintiff continued its work on the project.  Defendant approved and paid for out-of-scope work upon being invoiced.  Plaintiff alleges that Defendant's oral and written assurances and course of conduct constituted modifications of their contract and a waiver of the requirement that modifications be in writing only.

-2-

On or about August 29, 2018, Plaintiff identified additional out-of-scope work.  Later, on October 25, 2018, Plaintiff advised Defendant that it intended to stop work pending assurance of payment.

On November 5, 2018, Defendant issued a formal written order to stop work, but acknowledged that the "stop work" directive was not the result of poor performance.  (ECF DKT #15-7 at 4).

On November 7, 2018, Plaintiff responded to Defendant, "as requested, we have stopped work."  (ECF DKT #15-7 at 2).  However, in return, Plaintiff requested payment on all past due invoices and a written acknowledgment that all unpaid invoices would be satisfied in full prior to submitting the native source files to Defendant.  (*Id.*).

Plaintiff alleges that some overdue invoices and almost $13,000.00 in expenses were paid; but Defendant refused to pay the remaining open invoices.

Plaintiff transferred the native source files to Defendant on December 18, 2018.  (ECF DKT #15-9, Exhibit "I").

Plaintiff alleges that Defendant owes $174,411.52 on the Subcontract.  Plaintiff's First Amended Complaint asserts Breach of Contract, Unjust Enrichment, Action on Account and Promissory Estoppel.

Defendant moves to dismiss and argues that any pricing changes to the fixed price agreement had to be in a written amendment signed by both parties.  Also, Defendant argues that equitable claims fail where a written contract governs the same subject matter.  Further, Defendant points to the Limitation of Liability provision in the Berg Contract, which requires any action to be brought within one year and which caps liability at the firm subcontract price.

If the Court does not dismiss the entire Amended Complaint, Defendant alternatively moves to strike the attorney fee claim as unavailable in a pure contract action and to strike the jury demand because of the parties' contractual jury waiver.

## II. LAW AND ANALYSIS

### Standard of Review - Fed.R.Civ.P. 12(b)(6)

"In reviewing a motion to dismiss, we construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).  Factual allegations contained in a complaint must "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  *Twombly* does not "require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.  Dismissal is warranted if the complaint lacks an allegation as to a necessary element of the claim raised. *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485 (6th Cir. 1990). The United States Supreme Court, in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), discussed *Twombly* and provided additional analysis of the motion to dismiss standard:

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-plead factual allegations a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. at 679.

According to the Sixth Circuit, the standard described in *Twombly* and *Iqbal* "obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Weisbarth v. Geauga Park Dist.*, 499

-4-

F.3d 538, 541 (6th Cir.2007) (quoting *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2nd Cir.2007)).

The Court should disregard conclusory allegations, including legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555; *J & J Sports Prods. v. Kennedy*, No. 1:10CV2740, 2011 U.S. Dist. LEXIS 154644, *4 (N.D.Ohio Nov. 3, 2011).

A written instrument attached to a pleading is a part of the pleading for all purposes. Fed.R.Civ.P. 10(c). "In addition, when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.,* 508 F.3d 327, 335–36 (6th Cir. 2007).

"Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations ... a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable ..." *Twombly*, 550 U.S. at 556.

**Breach of Contract**

To establish breach of contract in Ohio, "a plaintiff must demonstrate by a preponderance of the evidence that (1) a contract existed, (2) the plaintiff fulfilled his obligations, (3) the defendant failed to fulfill his obligations, and (4) damages resulted from this failure." *Anzalaco v. Graber,* 970 N.E.2d 1143, 1148 (Ohio Ct.App. 2012).

**Contract interpretation**

Plaintiff's First Amended Complaint was brought in federal court under diversity jurisdiction. Therefore, the substantive law of Ohio applies; and the district court must look for guidance to the decisions of the Ohio Supreme Court. *Kepley v. Lanz*, 715 F.3d 969, 972 (6th Cir. 2013). If the Ohio Supreme Court has not spoken on an issue, then the district court

-5-

turns to the decisions of its lower courts, to the extent they are persuasive, to predict how the

Ohio Supreme Court would decide the issue. *Id.; Bailey v. V & O Press Co.*, 770 F.2d 601,

604 (6th Cir. 1985).

The cardinal purpose for judicial examination of any written instrument is to ascertain

and give effect to the intent of the parties. *Aultman Hosp. Assn. v. Community Mut. Ins. Co.*,

46 Ohio St.3d 51, 53 (1989). "The intent of the parties to a contract is presumed to reside in

the language they chose to employ in the agreement." *Kelly v. Med. Life Ins. Co.*, 31 Ohio

St.3d 130 (1987), paragraph one of the syllabus.

In contracts, "words and phrases are to be given their plain and ordinary meaning

unless manifest absurdity results or unless some other meaning is clearly intended from the

face or overall contents of the contract." *Williams-Diggins v. Permanent General Assurance*

*Corporation of Ohio*, No. 108846, 2020 WL 4516931, *2 (Ohio Ct. App., 8th Dist. Aug.6,

2020) (citing *Beverage Holdings, LLC v. 5701 Lombardo*, *LLC*, 159 Ohio St.3d 194, 197

(2019)).

A court should read and consider the contractual provisions as a whole and not in

isolation. *Foster Wheeler Enviresponse v. Franklin Cty. Convention Facilities Auth.*, 78 Ohio

St.3d 353, 361 (1997). "Courts should not interpret contracts in a way that renders at least

one clause superfluous or meaningless." *Transtar Elec. Inc. v. A.E.M. Elec. Servs. Corp.*, 140

Ohio St.3d 193, 2014-Ohio-3095, ¶ 26 (2014).

The absence of definitions does not necessarily make terms ambiguous. *Nationwide*

*Mut. Fire Ins. Co. v. Guman Bros. Farm*, 652 N.E.2d 684, 686 (Ohio 1995).

Ambiguity exists when a term is subject to more than one reasonable interpretation.

-6-

*King v. Nationwide Ins. Co.*, 519 N.E.2d 1380, 1383 (Ohio 1988); *Buckeye Union Ins. Co. v. Price*, 313 N.E.2d 844, 846 (Ohio 1974).  However, courts cannot create ambiguity if none exists.  *Lager v. Miller-Gonzalez*, 896 N.E.2d 666, 669 (Ohio 2008); *Alexander v. Buckeye Pipe Line Co.*, 374 N.E.2d 146, 150 (Ohio 1978).

The Court is not permitted to re-write the parties' contract.  "It is not the responsibility or function of this court to rewrite the parties' contract in order to provide for a more equitable result."  *Foster Wheeler Envirespense*, 78 Ohio St. 3d at 362.  The Court must consider the contract as a whole and not read any provision in isolation.  *Id.* at 361.  The Court's contract interpretation must not result in an absurdity.  *Beverage Holdings, LLC,* 159 Ohio St.3d at 197.  The Court is prohibited from rendering a contract provision superfluous or meaningless.  *Transtar Elec., supra* at ¶ 26.

### GGS - HDT - Berg Contract Terms

Plaintiff attaches the Subcontract between GGS and HDT, as well as the Agreement between HDT and Berg, to the First Amended Complaint.  (ECF DKT #15-2).  Following the preliminary "whereas" clauses, the Subcontract recites the subject matter of GGS's and HDT's agreement.

¶ 1 is titled "**Services**" and reads:

Subcontractor agrees to provide the necessary personnel, materials, services, and facilities and otherwise do all things necessary to accomplish the work as set forth in Exhibit B, Statement of the Work (the "Services").  **The parties agree that the Services shall be governed by the terms of this Agreement and the terms of the Berg Subcontract, in which the term "Berg" shall mean HDT and the term "Subcontractor" shall mean GGS Information Services.** Where the terms of this Agreement conflict with the terms of the Berg Subcontract, the terms of this Agreement shall apply.  (Emphasis added).

This provision broadly describes what Plaintiff will do in support of the contract for

the MTRCS.  Also, it recites that the Services will be governed by the terms of both the Subcontract and the Berg Contract.  For purposes of the Subcontract, the term "Berg" in the Berg Contract shall mean Defendant HDT and the term "Subcontractor" shall mean Plaintiff GGS.

¶ 34 of the Berg Contract is captioned "**Definitions**."  In that section, **"Order"** is defined as the instrument of contracting, purchasing or ordering, such as "Purchase Order," "PO," **"Subcontract,"** "Contract" or any such type designation, including this Agreement, all referenced documents, exhibits and attachments.  ¶ 34e.  (Emphasis added).  In addition, **"Work" or "Works"** means all required articles, materials, supplies, goods, and **services** constituting the subject matter of this Agreement.  ¶ 34g.  (Emphasis added).

The **Limitation of Liability** provision (¶ 36) reads as follows:

> Any action by Subcontractor arising out of or related to this Order must be commenced within one year after the scheduled date of delivery of the Works.  Neither party's liability on any claim of any kind arising out of or related to an Order shall exceed the purchase price of the Works which give rise to the claim.  The provisions of this clause shall survive the term and/or termination of this Agreement.

Plaintiff contends that Defendant cannot rely on the Limitation of Liability clause in the Berg Contract for several reasons.

First, Plaintiff asserts that except for "Services," no other terms of the Berg Contract apply to the Subcontract.  (Opposition Brief, ECF DKT #17 at 17).  This argument is the reverse of the plain reading of ¶ 1 of the Subcontract, which states that the *terms* (plural) of the Berg Contract govern the Services Plaintiff agrees to perform.

Second, when Plaintiff looks at the wording of the Limitation of Liability provision, Plaintiff reads "Subcontractor" to mean HDT, the subcontractor under the Berg Agreement.

-8-

Thus, Plaintiff believes there is a one-year limitations period on any action brought by HDT. (See ECF DKT #17 at 17).  However, this reading disregards Plaintiff's own commitment in the Subcontract at ¶ 1, agreeing that "Berg" shall mean HDT and "Subcontractor" shall mean GGS.

Third, the limitations period is defined as within one year of the scheduled date of delivery of the Works.  Plaintiff notes that there is no dispute that the date of delivery in the Purchase Order was August 21, 2017, meaning the limitations period would have run on August 21, 2018.  Yet, the work performed by Plaintiff for Defendant continued until the end of 2018.  So, the plain language leads to an absurd result, requiring Plaintiff to bring suit at the same time it was conducting work on the project and without knowing whether or not there was a breach.   (See ECF DKT #17 at 17-18).  Defendant denies that an absurdity is created, but acknowledges that the business relationship would have been severely strained by a lawsuit in the midst of an ongoing services contract.

With regard to the calculation of the limitations period, the Court is required to look at the ordinary meaning of the contract language and to interpret the parties' intent from the words they chose to use.  There is no ambiguity here, nor is there a justification to nullify the contractual provision.  Plaintiff's factual allegations in the First Amended Complaint show that Plaintiff's work continued and invoices were paid by Defendant beyond the Delivery Date of August 21, 2017, and beyond August 21, 2018.  Defendant does not argue otherwise.

Reading the pleading and the attached exhibits liberally in favor of Plaintiff, the Court determines that Plaintiff officially stopped work on November 7, 2018, and delivered the native source files to Defendant on December 18, 2018.  Those facts allow for an action to be

timely filed by Plaintiff on or before December 18, 2019.  However, the instant case was brought on February 12, 2020, outside the agreed one-year limitations period.

Fourth, Plaintiff contends that the plain language of the Berg Contract references "this Order, i.e., the Order between Berg and Subcontractor (HDT.)."  Plaintiff asserts further that "[n]owhere are Subcontracts identified as part of the Order."  (ECF DKT #17 at 18).  Plaintiff is in error.  The term "Order" in the Berg Contract is defined to mean instruments such as "subcontract" and "purchase order."  ¶ 34e.

Lastly, Plaintiff contends that even if the one-year provision were plausible, it would not extinguish Plaintiff's equitable claims.  (ECF DKT #17 at 19).  Once again, a plain reading of the limitations provision defeats Plaintiff's argument.  The opening words are: "Any action."  The Court can only interpret that phrase to be inclusive of equitable actions, such as Plaintiff's Unjust Enrichment and Promissory Estoppel claims.

### III. CONCLUSION

It bears repeating that the Court may not re-write the parties' contract in order to provide a more equitable result.  *Foster Wheeler Enviresponse*, 78 Ohio St. 3d at 362.  The Court cannot create ambiguity where there is none.  *Lager*, 896 N.E.2d at 669.  Moreover, the Court is prohibited from interpreting a contract in such a manner as to render any provision meaningless.  *Transtar Elec., supra* at ¶ 26.

A plain and ordinary reading of the parties' agreements, and most particularly of the Limitation of Liability provision, necessitates the conclusion that Plaintiff's First Amended Complaint is barred by the one-year limitations period.  Faced with that conclusion, it is unnecessary for the Court to address any other of Defendant's arguments.

-10-

Therefore, for these reasons, the Motion (ECF DKT #16) of Defendant HDT Expeditionary Systems, Inc. to Dismiss First Amended Complaint of Plaintiff GGS Information Systems, Inc. is granted.  The alternative Motion to Strike Certain Allegations is denied as moot.

**IT IS SO ORDERED.**

**DATE: January 25, 2021**

       **s/Christopher A.Boyko**
**CHRISTOPHER A. BOYKO**
**Senior United States District Judge**